IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CINCINNATI INSURANCE COMPANY,      )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )      Case No. 06-cv-1035-MJR
                                   )
TAYLOR-MORLEY, INC., et al.        )
                                   )
                    Defendants.    )

MEMORANDUM AND ORDER

REAGAN, District Judge:

A.      Introduction &Procedural Background

In February 2005, seven homeowners – Joseph Findley, Heather Findley,

Timothy Hoestermann, Debra Hoestermann, Norma Hoestermann, Mark Ratliff and Vivian

Ratliff – sued real estate developer Taylor-Morley, Inc. ("TMI") in the Circuit Court of St.

Clair County alleging that TMI breached contractual obligations and made false

representations about "Olde Lantern Estates," a real estate development in Belleville,

Illinois (St. Clair County Case No. 05-L-1025). According to the homeowners, TMI

promised that the homes would be constructed around a "championship golf course" but

failed to construct a golf course, quit actively selling lots in the development, and made

other changes adversely affecting the value of the Olde Lantern properties.

In January 2006, TMI removed that suit to this Court (Case No. 06-cv-0078-

MJR). After threshold review, the undersigned Judge found the removal untimely and

remanded the action to St. Clair County Circuit Court, where it remains pending.

In December 2006, Cincinnati Insurance Company – who issued four insurance policies to TMI – filed the above-captioned action here, seeking a declaration that Cincinnati has no duty to defend or indemnify TMI in the Illinois state court breach of contract action filed by the homeowners.[1] Cincinnati asserts that the applicable policies provide no coverage because the state court complaint does not plead an "occurrence" (Count I), the state court complaint alleges no "bodily injury" (Count II), the state court complaint alleges no "property damage" (Count III), the state court complaint alleges no "personal injury" or "advertising injury" (Count IV), and multiple exclusions bar coverage of the state court lawsuit (Count V). Subject matter jurisdiction lies under the federal diversity statute, 28 U.S.C. § 1332.[2]

Now before the Court is Cincinnati's December 14, 2007 motion for summary judgment, which has been extensively briefed by the parties (Docs. 39, 40, 50, 58 and 59). Analysis begins with the legal standards governing summary judgment.

B.    Standard Governing Summary Judgment in Federal Court

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.

_____

[1]    Cincinnati's January 2008 "second amended declaratory judgment complaint" (40 pages long with 66 pages of exhibits) is the operative complaint in this Court. This should not be confused with the "First Amended Complaint" filed by the homeowners' in the underlying Illinois state court case against TMI.

[2]    The named parties in this declaratory judgment action are completely diverse (Cincinnati Insurance is an Ohio citizen, TMI is a Missouri citizen, and the homeowners are Illinois citizens). The amount in controversy easily suffices.

*Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008), *citing* Fed. R. Civ. P. 56(c), *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and *Krieg v. Seybold*, 481 F.3d 512, 516 (7th Cir. 2007).

In ruling on a summary judgment motion, this Court must construe the evidence and all inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). Thus, in the case *sub judice*, the undersigned Judge construes all facts and makes all reasonable inferences in favor of Defendants (TMI and the homeowners), the nonmovants.

C.    Conflicts of Law Analysis

Urging this Court to declare that Cincinnati owes no duty to defend or indemnify TMI in the Illinois state court suit, Cincinnati maintains that the allegations of the underlying state court complaint do not fall within coverage under the policies in question – commercial general liability and umbrella policies issued to TMI which cover the period of June 2000 to June 2004. Before discussing the duties to defend and indemnify, the Court must resolve one preliminary issue – which state's substantive law to apply in this diversity action.

The parties agree this issue must be resolved using Illinois choice of law principles. Defendants argue those principles mandate application of Missouri law. Plaintiff maintains that Illinois law controls. Plaintiff has the better argument here.

In a suit "where the federal court's subject matter jurisdiction is based on diversity ... the forum state's choice of law rules determine the applicable substantive law." *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007), *citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), and *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704-05 (7th Cir. 2004). *Accord Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873-74 (7th Cir. 2000).

Illinois is the forum state here. Illinois has adopted the "most significant contacts" test of the Restatement (Second) of Conflicts § 188 (1971) to decide choice of law disputes arising from contracts. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004).

Under this test (assuming the parties have not made an effective choice of law in their contract itself), relevant contacts include "the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties." *Id., citing Wildey v. Springs*, 47 F.3d 1475, 1483 (7th Cir. 1995).

These factors must be "evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188, at 575 (1971). In the specific context of <u>insurance</u> contracts, the single  most important factor is the principal *location of the insured risk* during the policy term. *Eclipse Mfg. Co. v. U.S. Compliance Co.*, – N.E.2d –, 2007 WL 4259439, *7 (Ill. App. Nov. 30, 2007), *citing* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 at 610. *Accord West Suburban*

*Bank of Darien v. Badger Mut. Ins. Co.*, 141 F.3d 720, 724 (7th Cir. 1998), *citing Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995).

So, although the place of delivery of the contract, the domicile of the insured and insurer, and the place of performance all merit consideration, "the location of the insured risk is given special emphasis." *Jupiter*, 225 F.3d at 874, *citing Society of Mount Carmel v. Nat'l Ben Franklin Ins. Co. of Illinois*, 643 N.E.2d 1280, 1287 (Ill. App. 1984). *See also Westchester Fire Ins. Co. v. G. Heileman Brewing Co., Inc.*, 747 N.E.2d 955, 962-63 (Ill. App. 2001), *appeal denied*, 755 N.E.2d 484 (Ill. 2001).

In the case at bar, the insurance policies were issued and TMI is domiciled in Missouri (*see* Kennedy and Krafve Affidavits, Docs. 58-2 at p. 1 & 58-4 at p. 14), but the location of the insured risk (as to all seven properties) is Illinois. The underlying lawsuit was filed by Illinois citizens in Illinois court. Illinois is the state in which Cincinnati has been called to perform under the contract. Each of the homes insured by the policies is located in Illinois. Whether Cincinnati owes a duty to defend or indemnify TMI in the Illinois suit brought by the Illinois homeowners under the policies insuring the Illinois properties, therefore, should be decided under Illinois law.

D.    Analysis of Duties to Defend & Indemnify

Under Illinois law, the interpretation of an insurance contract is a question of law which may be resolved summarily. *See Illinois School Dist. Agency v. Pacific Ins. Co., Ltd.*, 471 F.3d 714, 719 (7th Cir. 2006). *See also Keystone Consol. Industries*,

*Inc. v. Employers Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006);

*Transamerica Ins. Co. v. South,* 125 F.3d 392, 398  (7th Cir. 1997); *Employers Ins. of*

*Wausau v. Bodi-Wachs Aviation Ins. Agency, Inc.,* 39 F.3d 138, 141 (7th Cir. 1994);

*Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 620 N.E.2d 1073, 1077

(Ill. 1993).

If the words of an insurance policy are unambiguous, the court must give

them their plain, ordinary and popular meaning; but if the words are susceptible to more

than one reasonable interpretation, they "are ambiguous and will be construed in favor

of the insured and against the insurer that drafted the policy." *Illinois School Dist.,* 471

F.3d at 719, *citing Maremont Corp. v. Continental Cas. Co.,* 760 N.E.2d 550, 554 (Ill.

2001). The Court now turns to whether the insurance policies in question obligate

Cincinnati to defend and/or indemnify TMI in the underlying state court action.

As a general rule, the duty to defend is broader than the duty to indemnify.

In *Keystone Consol. Industries,* 456 F.3d at 762, the United States Court of Appeals for

the Seventh Circuit explained that under Illinois law: "The duty to defend is generally

broader because it arises in cases of arguable or potential coverage. That is, an insured

need only put the insurer on notice of the claim in order to trigger the insurer's duty to

defend."

By contrast, the duty to indemnify "arises only in circumstances of actual

coverage; if the insurance policy does not cover what is alleged in the claim, the insurer

will not have a duty to indemnify based on that claim." *Id. See also Westchester Fire,*

**747 N.E.2d at 964,** *citing Conway v. Country Casualty Ins. Co.*, **442 N.E.2d 245 (Ill. 1982)("An insurer's duty to defend is much broader than its duty to indemnify.").**

Whether an insurer owes a duty to defend its insured is determined by comparing the allegations of the underlying complaint to the relevant provisions of the insurance policies. *Lapham-Hickey Steel,* **655 N.E.2d at 847.** *Accord U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.,***578 N.E.2d 926, 930 (Ill. 1991);** *Westchester Fire,* **747 N.E.2d at 964.** If the complaint "alleges facts within the coverage of the policy or *potentially* within the coverage of the policy, the duty to defend has been established." *Maryland Cas. Co. v. Peppers,* **355 N.E.2d 24, 28 (Ill. 1976).**

Indeed, if the underlying complaint alleges facts potentially within policy coverage, the insurer is obliged to defend its insured *even if* "the allegations are groundless, false, or fraudulent." *Pekin Ins. Co. v. United Parcel Service, Inc.,* **- N.E.2d -, 2008 WL 642598, *3 (Ill. App. 2008).** An insurer may not justifiably refuse to defend an action against its insured, "unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Id., quoting Northbrook Property & Cas. Co.,* **741 N.E.2d 253, 254 (Ill. 2000).** Additionally, if the underlying complaint alleges several theories of recovery against the insured, any *one* of which is within the potential coverage of the policy, the duty to defend arises. *U.S. Fidelity,* **578 N.E.2d at 930.**

Several key principles guide this Court's comparison of the underlying complaint and the policy provisions.

First, any doubt regarding the existence of a duty to defend "is to be resolved in favor of the insured." *Pekin,* **2008 WL 642598 at \*3,** *citing United Services Automobile Ass'n v. Dare,* **830 N.E.2d 670, 678 (Ill. App. 2005).** Six months ago, the Seventh Circuit stressed this point:

> In a duty-to-defend action, we begin with the deck stacked in favor of the insured. "Allegations of the underlying complaint must be construed liberally, and any doubt as to coverage must be resolved in favor of the insured."

*Del Monte Fresh Produce N.A. v. Transportation Ins. Co.,* **500 F.3d 640, 643 (7th Cir. 2007).** Second, the labels a plaintiff uses in the underlying complaint are not dispositive of whether a duty to defend exists. *Del Monte,* **500 F.3d at 644;** *Connecticut Indem., Co. v. DER Travel Service, Inc.,* **328 F.3d 347, 349 (7th Cir. 2003);** *Lexmark Int'l, Inc. v. Transp. Ins. Co.,* **761 N.E.2d 1214, 1221 (Ill. App. 2001).** Finally, as a general rule, even if an insurer has a duty to defend, whether the insurer has a duty of indemnify "will only be ripe for determination after the insured has incurred liability in the underlying claim against it." *Country Mut. Ins. Co. v. Carr,* **867 N.E.2d 1157, 1161 (Ill. App. 2007),** *citing Outboard Marine Corp.,* **607 N.E.2d 1204, 1221 (Ill. 1992).**

Focus now shifts to the policies in the case at bar. Cincinnati issued four policies to TMI: (1) Policy No. CPP 072 31 46, a general liability coverage policy effective June 1, 2000 to June 1, 2003; (2) Policy No. CPP 072 31 46, a *renewal* policy of general liability coverage effective June 1, 2003 to June 1, 2004; (3) Policy No. CCC 447 63 39, an umbrella liability policy effective June 1, 2000 to June 1, 2003; and (4) Policy No. CCC

447 63 39, a *renewal* policy of umbrella coverage effective June 1, 2003 to June 1, 2004. Complete copies of all four policies were provided with Cincinnati's original declaratory judgment complaint. They are referred to in this Order collectively as "the Policies."

The complaint in the underlying Illinois state court lawsuit (filed in February 2005) originally contained claims for negligent misrepresentation, plus breach of warranty, breach of contract and fraud. Later, the negligent misrepresentation claims were dismissed (see Doc. 58, p. 3). In June 2007, the homeowners filed a "First Amended Complaint" in state court (Doc. 47-2).

That complaint against TMI contains twenty counts, as follows:

| | |
|---|---|
| Count I – | breach of contract (as to the Findleys), |
| Count II - | breach of contract/warranties (the Findleys), |
| Count III- | fraud (the Findleys), |
| Count IV - | fraudulent concealment (the Findleys), |
| Count V - | violation of IL consumer fraud act (the Findleys), |
| Count VI - | breach of contract (Norma Hoesterman), |
| Count VII - | breach of contract/warranties (Norma Hoesterman), |
| Count VIII - | fraud (Norma Hoesterman), |
| Count IX - | fraudulent concealment (Norma Hoesterman), |
| Count X - | violation of IL consumer fraud act (Norma Hoesterman), |
| Count XI - | breach of contract (Timothy & Debra Hoesterman), |
| Count XII - | breach of contract/warranties (Timothy & Debra Hoesterman), |
| Count XIII - | fraud (Timothy & Debra Hoesterman), |
| Count XIV - | fraudulent concealment (Timothy & Debra Hoesterman), |
| Count XV - | viol. of IL consumer fraud act (Timothy & Debra Hoesterman), |
| Count XVI - | breach of contract (the Ratliffs), |
| Count XVII - | breach of contract/warranties (the Ratliffs), |
| Count XVIII - | fraud (the Ratliffs), |
| Count XIX - | fraudulent concealment (the Ratliffs), and |
| Count XX - | violation of IL consumer fraud act (the Ratliffs). |

In these counts, the homeowners allege the following. TMI made representations and actively marketed the homes in Olde Lantern Estates as if they would be in a premier golf community but never completed a golf course. Grading work commenced on the course but was abandoned. Ultimately, the land on which the course was to be built was foreclosed upon, leaving a "visual nuisance" adversely affecting the value of the Plaintiffs' properties. TMI failed to honor promises and contractual obligations to construct the homes in a golf course setting. As a result, the value of the properties "is substantially less than it would have been had Olde Lantern Estates included a golf course as represented" (Doc. 47-2, p. 8).

Also, TMI breached its obligation to properly construct the homes. TMI built each of Plaintiffs' homes with structural and latent defects, then failed to repair those defects. The defects include defective electrical outlets throughout the houses, improperly constructed fireplaces, poorly installed wallboard, installation of "mismatched" marble in bathrooms, cracks in the basements which resulted in "water penetration," improperly hung exterior siding (allowing moisture and mold accumulation), cracked drywall throughout the homes, and shoddily installed garage doors (state court complaint; Doc. 47-2, p. 6). The Court now compares these claims to the relevant provisions of the Policies.

### BREACH OF CONTRACT CLAIMS FOR CONSTRUCTION DEFECTS

Counts II, VII, XII and XVII of the underlying complaint allege that TMI breached its contract with each of the homeowners by constructing homes with structural

and/or latent defects and then refusing to properly repair those defects.

Cincinnati asserts that it has no obligation to defend or indemnify TMI, because TMI's alleged conduct does not constitute an "occurrence" under the Policies (Doc. 47, p. 35). Defendants concede that for any property damage to be covered under the Policies, there must be an "occurrence" and – as it relates to property damage – an occurrence requires an accident resulting in injury neither intended nor expected by a reasonably prudent person (Doc. 58, p. 7) .

The 2000-2003 general liability policy (Section 1, ¶ I(b)) states as follows.

> This insurance applies to "bodily injury" and "property damage" only if:
> (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> (2)  The "bodily injury" or "property damage" occurs during the policy period.

Section V, ¶ 12 defines  occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (*see* Doc. 2-3).

The 2003-2004 general liability policy (Section V, ¶ 16) contains the same definition of occurrence.  The 2000-2003 umbrella liability policy (Section V, ¶ 9) and 2003-2004 umbrella liability policy (Section V, ¶ 16) similarly define occurrence to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage'" *or* "an offense that results in 'personal and advertising injury.'"

This exact definition of occurrence was at issue in ***Pekin Ins. Co. v. Miller***,

**854 N.E.2d 693, 696 (Ill. App. 2006).** That decision reveals that Illinois courts have construed accidents as involving "untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." *Id., citing Monticello Ins. Co. v. Wil-Freds Construction, Inc.,* **661 N.E.2d 451 (Ill. App. 1996).**

In *Wil-Freds,* **661 N.E.2d at 455-56,** the Illinois Court of Appeals scrutinized a general commercial liability policy which defined occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured" and noted that the "natural and ordinary consequences of an act do not constitute an accident."

The *Wil-Freds* Court held that breach of contract claims alleging defective construction of a building resulting in damage to the building itself do <u>not</u> constitute "occurrences" within the definition of a commercial general liability policy. *Id.* **at 456,** *citing Indiana Ins. Co. v. Hydra Corp.,* **615 N.E.2d 70, 73-74 (Ill. App. 1993)(underlying suit alleging breach of contract based on cracks in concrete flooring and peeling exterior paint did not allege damages resulting from an "occurrence," as required to trigger coverage under commercial general liability policy).**[3]

---

[3]  Missouri courts have reached the same conclusion. *See, e.g., J.E. Jones Construction Co. v. Chubb & Sons, Inc.,* **486 F.3d 337, 340-41 (8th Cir. 2007)(applying Missouri law in duty to defend/declaratory judgment action involving policy with nearly identical definition of occurrence as in the instant case, Eighth Circuit declared: "Courts have consistently held ... that where the underlying cause of action is a breach of contract, the breach of contract is not an 'occurrence' according to the applicable definition of**

In ***Viking Construction Management, Inc. v. Liberty Mutual Ins. Co.*, 831 N.E.2d 1, 7-8 (Ill. App. 2005)**, the Court examined in detail three approaches for determining whether faulty construction is covered under a commercial general liability policy. For instance, the economic loss doctrine recognizes that commercial liability policies are "not intended to pay the costs associated with repairing and replacing the insured's defective work and products, which are purely economic losses," or else liability policies would function as "performance bonds." ***Id.*, at 55.** The ***Viking*** Court concluded that all three approaches yield a single overall conclusion: "Illinois considers construction defects to not constitute an accident or occurrence necessary to trigger coverage under CGL policies." ***Id.*, 831 N.E.2d at 8.**

In the instant case, the Policies cover property damage resulting from an "occurrence" during the policy period (*see* Doc. 2-3, p. 14). An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions: (Doc. 2-3, p. 24). The term "accident" is not ambiguous and must be taken in its plain and ordinary sense. The homeowners have not alleged any conduct by TMI constituting an "accident" qualifying as "occurrence" under the Policies.

Like the underlying allegations in ***Wil-Freds,*** these homeowners' breach of contract claims allege shoddy workmanship and construction defects in the homes within

---

'occurrence.'... **The rationale for these decisions is that because the performance of the contract is within the insured's control, a breach of that contract cannot qualify as an 'accident' and therefore cannot be an 'occurrence.'").**

Olde Lantern Estates.[4]  The specific defects alleged here flowed as natural and ordinary consequences of improper construction techniques; they were not the kind of sudden, unexpected, disastrous results constituting an accident.  Therefore, the breach of contract counts of the underlying complaint (Counts II, VII, XII and XVII) do not state facts which bring the case within, or potentially within, coverage under the Policies. Cincinnati has no duty to defend TMI against those claims.

### BREACH OF CONTRACT CLAIMS BASED ON TMI'S FAILURE TO BUILD THE HOMES IN A "CHAMPIONSHIP GOLF COURSE SETTING"

Counts I, VI, XI and XVI of the underlying complaint allege that TMI breached its contracts with the homeowners by failing to build the homes in a golf course setting. Like the breach of contract claims based on poor construction, these breach of contract claims do <u>not</u> allege conduct by TMI constituting an "accident" qualifying as an "occurrence" and triggering property damage coverage under the Policies.

Furthermore, as to these four claims, the homeowners seek to recover both the "lot premiums" they paid and damages for the diminished value of their homes due to the fact no golf course was completed.  Such losses do not constitute "property damage" under the Policies.

---

[4]  By contrast, sudden movement of basement walls (resulting from improper use of earthmoving equipment) did constitute an accident and thus fell within the "occurrence" coverage of a commercial general liability policy in *Country Mutual Ins. Co. v. Carr*, 867 N.E.2d 1157, 1162-63 (Ill. App. 2007).

The liability policies issued by Cincinnati define property damage to mean either "physical injury to tangible property" or "loss of use of tangible property that is not physically injured" (*see* Doc. 2-3, p. 24). Lost lot premiums and diminution in value of the homes based on the absence of the golf course constitute neither physical injury to nor lost use of property.

In *Travelers Ins. Co. v. Eljer Mfg., Inc.*, **757 N.E.2d 481, 500-02 (Ill. 2001)**, a declaratory judgment suit assessing coverage under CGL policies for a defectively manufactured plumbing system, the Illinois Supreme Court confronted this issue. The Court held that diminution of value of a home resulting from the improperly installed plumbing did <u>not</u> trigger coverage as to those claims.

> The arguments of the policyholders are misplaced. We do not find ambiguity in the phrase "physical injury to tangible property." In order to trigger coverage for "property damage," the plain language of the post-1981 policies requires that there be an injury to tangible property and that the injury be physical in nature....
>
> ... tangible property does not experience "physical" injury if that property suffers intangible damage, such as diminution in value....
>
> In sum, this court now finds that, under its plain and ordinary meaning, the term "physical injury" unambiguously connotes damage to tangible property causing an alteration in appearance, shape, color or in other material dimension....
>
> We also conclude that under its plain and ordinary meaning, the phrase "physical injury" does not include intangible damage to property, such as economic loss.... [T]he diminution in value ... does not constitute a *physical* injury.

The same reasoning applies here. The breach of contract claims based on failure to build the homes on a golf course (claims for which the homeowners seek lost lot premiums and damages for the diminished value of their properties) do not constitute claims for "property damage" triggering coverage under the Policies.

Even if the Court characterized these breach of contract claims as occurrences resulting in "property damage," the Policies specifically bar coverage for property damage to property not physically injured if that damage arises from a "defect, deficiency (or) inadequacy ... in 'your product' or 'your work'... or a delay or failure to you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms" (*see, e.g.*, Policy CPP 072 31 46 at § I(2)(m); Doc. 2-3, p. 17). TMI's failure to perform under the contracts/agreements with the homeowners – i.e., promising to build the homes in a golf course setting – plainly and squarely falls within this exclusion.[5]

So, the claims in Counts I, VI, XI and XVI of the underlying state court complaint do not fall within, or even *potentially* fall within, coverage under the Policies, and Cincinnati has no duty to defend TMI against those claims.

_____

[5]     If an exclusionary clause is relied upon to deny coverage, "its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." **Greenwich Ins. Co. v. RPS Products, Inc., – N.E.2d –, 2008 WL 341975, *8 (Ill. App. Feb. 4, 2008).**

The remaining twelve claims in the underlying lawsuit allege fraud by TMI. Counts III, VIII, XIII and XVIII allege fraudulent representations (*i.e.*, that TMI falsely represented that Olde Lantern Estates would be built in a championship golf setting. Counts IV, IX, XIV and XIX allege fraudulent concealment (*i.e.*, that TMI fraudulently concealed from the homeowners the fact that it did not own the property the golf course was to be built upon and that TMI knew – prior to selling the properties to the homeowners – that problems existed as to construction of a golf course on the site). Counts V, X, XV and XX allege violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.*, (*i.e.*, that TMI committed consumer fraud by engaging in a "pattern of deceptive practices in relation to the Olde Lantern Estates development" and *intending* that the homeowners rely on these deceptions in purchasing lots in the development)(Doc. 47-2). For the same reasons delineated above, none of these claims triggers coverage under the Policies.

First and foremost, the various forms of fraud alleged in the underlying suit involve knowing and intentional conduct, none of which constitutes an accident as needed to qualify as an "occurrence" and thereby trigger coverage under the Policies. Second, the diminished value of the homes does not constitute "property damage" under the Policies. Third, even if the Court construed the allegations of the state court suit to constitute property damage caused by an occurrence, the exclusion discussed above – found in Section I, subsection (2)(m) of the Policies – bars coverage for TMI's deficient

work and/or TMI's failure to "perform a contract or agreement in accordance with its terms."

Moreover, assuming (*arguendo*) that any of the fraud claims is found to potentially allege "property damage" caused by an "occurrence," the Policies clearly exclude such damage resulting from **intentional** acts by TMI. Section 1, subsection (2)(a) provides that the insurance does not cover bodily injury or *property damage* which may reasonably be expected to result from (or which, in fact, results from) *intentional acts by the insured*. The homeowners' state court complaint against TMI plainly alleges intentional and knowing conduct by TMI as to each of the fraud claims, whether fraudulent misrepresentation, fraudulent concealment, or consumer fraud. Indeed, the complaint seeks punitive damages based on TMI's "conscious disregard for" the homeowners' rights as well as TMI's "egregious conduct" with "evil motive."

Put simply, the twelve fraud counts all contain allegations that TMI intentionally deceived the homeowners, and the Policies flatly exclude such acts from coverage. The allegations of counts III, VIII, XIII and XVIII (fraudulent representations), counts IV, IX, XIV and XIX (fraudulent concealment), and counts V, X, XV and XX (violations of the Illinois Consumer Fraud and Deceptive Business Practices Act) do not fall within, or even *potentially* fall within, coverage under the Policies, and Cincinnati has no duty to defend TMI against those claims.

Which leaves the question of Cincinnati's duty to *indemnify* TMI in the underlying action. The Seventh Circuit zeroed in on the difference between these two

duties in ***Nationwide v. Zavalis*, 52 F.3d 689, 693-96 (Ill. 1995),** noting that the insurance company's declaratory judgment complaint implicated "two distinct duties - the duty to defend and the duty to indemnify."

Commenting that both the insurer and the insured "have a mutual interest in speedy resolution of the insurer's duty to supply … a defense against a … claim that may fall outside the coverage of the insurance policy," the Seventh Circuit affirmed the portion of the district court's ruling finding premature a ruling on the duty to indemnify but vacated the part of the district court's opinion declining to resolve the duty to defend, since the existence of the duty to defend could be ascertained "from the face of the state court complaint" without any foray into factual disputes in the underlying state court action. ***Id*.**

Typically, whether an insurer has a duty of indemnify "will only be ripe for determination after the insured has incurred liability in the underlying claim against it." ***Country Mut. Ins. Co. v. Carr*, 867 N.E.2d 1157, 1161 (Ill. App. 2007), *citing Outboard Marine Corp.*, 607 N.E.2d 1204, 1221 (Ill. 1992).[6]**

Fifteen years ago in ***Crum and Forster*, 620 N.E.2d at 1081 (emphasis added),** the Illinois Supreme Court qualified that statement with an oft-quoted passage:

---

[6] ***Accord Commercial Underwriters Ins. Co. v. Aires Environmental Services*, 259 F.3d 792 (7th Cir. 2001)(after resolving duty to defend in favor of insured, court properly found duty to indemnify not ripe, because determination of that issue could prejudice parties in pending underlying action); *Weber v. St. Paul Fire & Marine Ins. Co.*, 622 N.E.2d 66, 68 (Ill. App. 1993)(determination of insurer's duty to *indemnify* is premature prior to determination of insured's liability in underlying action).**

This principle, however, is only operative in cases where the court has determined that the insurer's duty to defend its insured has arisen.... This is so because the duty to defend is broader than the duty to indemnify and arises even if the facts alleged in the underlying complaint fall potentially within the policy's coverage.... The duty to indemnify arises only if the facts alleged *actually* fall within coverage.... **Clearly, where there is no duty to defend, there will be no duty to indemnify.**

*Meridian Sec. Ins. Co. v. Sadowksi*, 441 F.3d 536, 539 (7th Cir. 2006), echoed this holding just two years ago:

[D]efense depends on what the plaintiff alleges, while indemnity is limited to what the plaintiff proves.... [So] a declaratory judgment that the insurer need not defend means that it need not indemnify either... Had the district court concluded, as Meridian maintained, that the insurance does not cover Haddad's allegations, it would have prevailed on defense and indemnity at a stroke.

Five months after deciding *Meridian*, the Seventh Circuit carefully reexamined the holding and dicta of *Crum and Forster*.

In *Keystone Consolidated Industries*, **456 F.3d at 761-62**, the Seventh Circuit clarified that the duty to defend is *not always* broader than the duty to indemnify. Indeed, there can be circumstances in which a duty to indemnify would be triggered even if the duty to defend was not. "The fact that the duty to defend is generally broader than the duty to indemnify does not mean, as the district court believed, that where there is no duty to defend there can be no duty to indemnify." *Keystone*, **456 F.3d at 762.**

While it is true that, under Illinois law, the duty to indemnify can arise in

absence of a lawsuit triggering the duty to defend, *Keystone* did not abrogate the bedrock principle that "the duty to indemnify ... arises only in circumstances of actual coverage; if the insurance policy does not cover what is alleged in the claim, the insurer will not have a duty to indemnify based on that claim." *Id*.

That principle governs resolution of the duty to indemnify in this case. **See also American States Ins. Co. v. Capital Associates, 392 F.3d 939, 941 (7th Cir. 2004) (where fully briefed duty-to-defend was "dispositive of all issues," Seventh Circuit resolved all issues rather than directing "district court to put the case on ice").**

Here, the allegations of the twenty-count state court complaint do not even potentially fall within coverage under the Policies. The insurance simply does not cover the claims in the underlying St. Clair County Circuit Court lawsuit, and Cincinnati is obligated neither to defend nor to indemnify TMI in that action.

E.    Conclusion

If the facts alleged in an underlying complaint fall potentially within a policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action. *Pekin Insurance*, **684 N.E.2d at 855.** The converse also holds true.

An insurer need not defend if the allegations clearly fail to state facts potentially within the policy's coverage. *Wilkin Insulation*, **578 N.E.2d at 930.** *Accord Connecticut Indem.*, **328 F.3d at 349 ("an insurer has no duty to defend where it is 'clear from the face of the underlying complaint that the allegations fail to state facts which bring the case ... potentially within the policy's coverage'").**

And where a court "properly holds that an insurer has no duty to defend, the court may also hold that the insurer has no duty to indemnify." *West Bend Mut. Ins. Co. v. Rosemont Exposition Services, Inc.*, 880 N.E.2d 640, 647 (Ill. App. 2007).

Construing the record in the light most favorable to the nonmovants (TMI and the homeowners),[7] this Court finds that no genuine issues of material fact exist, and Cincinnati is entitled to judgment as a matter of law.

Accordingly, the Court **GRANTS** Cincinnati's December 14, 2007 motion (Doc. 39) and **DECLARES** that the Policies before this Court do <u>not</u> obligate Cincinnati to defend or indemnify Taylor-Morley in the underlying action. Finally, the Court **FINDS AGAINST** Taylor-Morley, Inc. on its **counterclaim** (part of the answer at Doc. 51) seeking various declarations regarding coverage under the Policies.

The Clerk of Court **SHALL ENTER JUDGMENT** in favor of Plaintiff Cincinnati Insurance Company and against all Defendants herein.

IT IS SO ORDERED.

DATED this 25th day of March 2008.

s/Michael J. Reagan

MICHAEL J. REAGAN
UNITED STATES DISTRICT COURT

---

[7]     TMI opposed summary judgment with a thorough brief, supported by voluminous documents/exhibits. The seven homeowners (also named Defendants in this declaratory judgment action; *see* Doc. 47, p. 2) adopted each argument and response in TMI's brief. *See* Doc. 50.